IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 18-cr-00266-PAB-3

UNITED STATES OF AMERICA,

    Plaintiff,

v.

3. CHRISTINA FITZGERALD,

    Defendant.
_____

# ORDER
_____

This matter is before the Court on defendant Christina Fitzgerald's Emergency Motion for Compassionate Release [Docket No. 460]. The government has filed a response opposing the motion. Docket No. 467.

## I. BACKGROUND

On August 6, 2018, Ms. Fitzgerald pled guilty to one count of conspiracy to possess with intent to distribute more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine. Docket Nos. 81, 82. On November 15, 2019, the Court sentenced Ms. Fitzgerald to 113 months imprisonment followed by five years of supervised release. Docket No. 449 at 2-3. Ms. Fitzgerald is currently incarcerated at FMC Carswell in Fort Worth, Texas. Docket No. 467-1 at 12-13, ¶¶ 23, 25. Her projected release date is June 29, 2027. *Id*. at 13, ¶ 25.

On October 1, 2020, Ms. Fitzgerald filed the instant motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Docket No. 460. Ms. Fitzgerald represents that her body mass index of 39.8, in combination with her hypertension,

epilepsy, and other medical conditions means that she is at higher risk of severe complications from COVID-19. *Id*. at 5-8. Ms. Fitzgerald also contends that FMC Carswell is not properly managing the COVID-19 pandemic. *Id.* at 2-5. On these bases, Ms. Fitzgerald requests that the Court grant her compassionate release from the remainder of her prison sentence and modify her term of imprisonment to time served. *Id.* at 18-19.

## II. ANALYSIS

"Under § 3582(c)(1)(A)(i)," known as the "compassionate release" provision, "a district court may grant a sentence reduction if, after considering the 18 U.S.C. § 3553(a) sentencing factors, it finds that 'extraordinary and compelling reasons warrant such a reduction' and the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (unpublished) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). A district court may grant a sentence reduction upon motion of the defendant only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). That requirement is satisfied here. Ms. Fitzgerald received her denial from the warden at FMC Carswell on August 18, 2020, Docket No. 460-1 at 2, and she filed her motion on October 1, 2020. *See* Docket No. 460.

The government "notes [that] it does not appear that the defendant has exhausted all administrative rights to appeal the Warden's denial of her request for relief," but does not explain why Ms. Fitzgerald has not exhausted her remedies given

that she waited thirty days before filing her motion. See Docket No. 467 at 2, ¶ 2. The relevant statute provides that a district court can reduce the term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, *whichever is earlier.*" 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The presence of the disjunctive "or" and the qualification of "whichever is earlier" means that a defendant may proceed in court either by fully appealing a denial or by waiting thirty days after the warden receives a request. See, e.g., *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them."). Accordingly, because thirty days have lapsed since Ms. Fitzgerald submitted her request, the Court has jurisdiction to consider the motion.

### A.  Extraordinary and Compelling Reasons

The Sentencing Commission has identified four categories of extraordinary and compelling reasons that may warrant a sentence reduction: (A) medical condition of the defendant; (B) age of the defendant; (C) family circumstances; and (D) other reasons. *See* U.S.S.G. § 1B1.13, cmt. n.1. Ms. Fitzgerald argues that she falls under both subsections A and D of the sentencing guidelines. Docket No. 460 at 9-15. Ms. Fitzgerald contends that her obesity, hypertension, epilepsy, anxiety, and depression, combined with the COVID-19 pandemic, warrant the reduction of her sentence to time served. *Id*.

While Ms. Fitzgerald suggests that subsection A is a proper vehicle for analyzing her motion, the Court finds that is in inappropriate.  The Sentencing Commission has explained that a defendant's medical condition may be an extraordinary and compelling reason warranting a sentence reduction where:

> (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii)  The defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*See* U.S.S.G. § 1B1.13, cmt. n.1(A).  None of Ms. Fitzgerald's illnesses are terminal, and the Court finds Ms. Fitzgerald's argument that her illnesses substantially diminish her ability to provide self-care unpersuasive, particularly given the government's representation that they have been meeting her medical needs and Ms. Fitzgerald's history of failing to take prescribed medication.  Docket No. 467 at 5, ¶ 9.  Thus, the Court will analyze the motion pursuant to subsection D of the policy statement.[1]

---

[1] To the extent that Ms. Fitzgerald argues that U.S.S.G. § 1B1.13 is not binding on the Court because it "predates the 2018 changes to the First Step Act," Docket No. 460 at 12, the Court disagrees.  "The First Step Act did not change the substantive standards governing compassionate release.  A proposed sentence reduction still must be supported by: (1) extraordinary and compelling reasons; (2) *applicable policy statements issued by the Sentencing Commission*; and (3) the factors set forth in 18 U.S.C. § 3553(a)."  *United States v. Edington*, No. 19-cr-00174-REB-1, 2020 WL 2744140, at *2 (D. Colo. May 27, 2020) (quotations and alterations omitted) (emphasis added).  "If the policy statement needs tweaking in light of [the First Step Act], that tweaking must be accomplished by the [Sentencing] Commission, not by the courts."  *United States v. Lynn*, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019).

Subsection D allows for release pursuant to extraordinary or compelling reasons, other than those set out in subsections (A)-(C), "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D). "[T]he BOP has issued Program Statement 5050.50 (2019), which lists factors which the BOP uses in determining whether extraordinary and compelling reasons exist for compassionate release." *United States v. Turns*, 2020 WL 2519710, at *3 (S.D. Ohio May 18, 2020). "BOP Program Statement 5050.50 identifies several nonexclusive factors to determine whether 'other' extraordinary and compelling reasons exist: the defendant's criminal and personal history, nature of the offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" *Saldana*, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)). Ms. Fitzgerald does not specifically argue that these subsection D factors weigh in favor of compassionate release, but instead argues that her health issues, combined with the COVID-19 pandemic, constitute extraordinary and compelling reasons for compassionate release. *See* Docket No. 460 at 12-15. However, because the list of factors set out in Program Statement 5050.50 is nonexclusive, the Court will consider whether Ms. Fitzgerald has met her burden "to prove that her medical conditions create extraordinary and compelling reasons warranting a sentence reduction." *Edington*, 2020 WL 2744140, at *4.

"The existence of the COVID-19 pandemic no doubt can be described as 'extraordinary' insofar as it is '[b]eyond what is usual, customary, regular, or common.'" *Id.* at *3 (quoting *United States v. Rodriguez*, 2020 WL 1627331 at *7 (E.D. Pa. April 1,

2020)). "However, because the apposite test is stated in the conjunctive, the dangers presented by the pandemic – which impact us all, worldwide – also must be 'compelling' in [the movant's] particular circumstances." *Id.*; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison cannot independently justify compassionate release."); *United States v. Bolze*, 2020 WL 2521273, at *7 (E.D. Tenn. May 13, 2020) ("[T]he COVID-19 pandemic cannot present an extraordinary and compelling reason alone because the policy statement directs courts to consider individual reasons for compassionate release, not general threats to the prison population.").

Ms. Fitzgerald represents that she is severely obese, with a BMI of 39.8, which is just below the threshold for morbid obesity, which requires a BMI of 40 or above. Docket No. 460 at 5-6. The Centers for Disease Control and Prevention ("CDC") has indicated that individuals with obesity, defined as a body mass index of 30 or higher, are at increased risk of developing severe illness from COVID-19. *See* Ctrs. for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Nov. 2, 2020); *see also United States v. Jenkins*, No. 99-cr-00439-JLK-1, 2020 WL 2466911, at *7 (D. Colo. May 8, 2020) (discussing research showing that "the severity of COVID-19 illness increases with body mass index"). Ms. Fitzgerald also states that she has hypertension, epilepsy, and "chronic pain and swelling in her right knee and has bilateral Achilles tendonitis, tachycardia, a significant cyst on the back of her leg, elevated liver enzymes, and non-alcoholic fatty

liver disease." Docket No. 460 at 6-7. The government does not contest Ms. Fitzgerald's medical problems, but argues that "a health concern over the COVID-19 pandemic is not itself justification for releasing an inmate," and that Ms. Fitzgerald has not been properly taking care of herself while incarcerated. Docket No. 467 at 3, 5, ¶¶ 6, 9. Ms. Fitzgerald has not provided medical records to support her motion.

While some courts have concluded that morbid obesity is an extraordinary and compelling reason justifying release during the COVID-19 pandemic, others have not. *Compare United States v. Jackson*, 2020 WL 3396901, at *6 (N.D. Ind. June 19, 2020) (granting release for 31-year old inmate with BMI of 47, high blood pressure, and history of respiratory illness), *and United States v. Hayes*, 2020 WL 4001903, at *3 (E.D. Mich. July 15, 2020) (noting that "obesity alone qualifies as a recognized risk factor" and granting release), *with United States v. Pride*, No. 16-cr-076-WJM, 2020 WL 3971652, at *2 (D. Colo. July 14, 2020) (denying release for 37-year old inmate with obesity and hypertension), *and United States v. Lindquist*, 2020 WL 351505, at *3 (E.D. Tex. June 26, 2020) (denying release for morbidly obese inmate because her condition does not "substantially diminish her ability to provide self-care").

Ms. Fitzgerald is not only obese; she also states that she suffers from hypertension. While "pulmonary hypertension" results in an increased risk for severe complications from COVID-19, regular hypertension "might" result in an increased risk. *See* Ctrs. for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Nov. 2, 2020). Additionally, she suffers from epilepsy. While the CDC does not list epilepsy as a risk factor, it does state that "neurological

7

conditions" could be risk factors. *Id.* None of her other medical conditions are risk factors for COVID-19. *See id.* Given the combination of risk factors, particularly the significant risk factor of obesity, the Court finds that Ms. Fitzgerald is at high risk for severe complications from COVID-19.

However, even with her risk profile, Ms. Fitzgerald fails to meet the requirements for release under subsection D. BOP Program Statement 5050.50 asks the reviewing court to examine the defendant's criminal and personal history, nature of the offense, disciplinary infractions, length of sentence and amount of time served, current age and age at time of offense and sentencing, release plans, and "whether release would minimize the severity of the offense." *Saldana*, 807 F. App'x at 819 (citations and alterations omitted). First, Ms. Fitzgerald has provided no information regarding her release plans other than that she "plans to live with a friend in Colorado upon re-entry." Docket No. 460 at 14-15. At the time of sentencing, Ms. Fitzgerald was unsure where she would stay after completing her sentence. Docket No. 437 at 19. Additionally, her presentence investigation report did not identify any family members who would be likely candidates for Ms. Fitzgerald to stay with post-release. *Id.* at 17-19; Docket No, 437-1 at 4. Her representation that she will "live with a friend" does not provide the Court with sufficient information regarding her release plans, particularly given the lack of family members with which she could stay and her inability to identify a place to stay after serving her sentence.

Second, Ms. Fitzgerald has a history of drug abuse. *See* Docket No. 437 at 20-21. While Ms. Fitzgerald was sober in 2013 for a period of about six months, she returned to daily use of methamphetamine. *Id.* at 21. The day after her release from

incarceration on January 24, 2018, she began using methamphetamines daily until her arrest for the offense of which she is currently serving her sentence. *Id.* While Ms. Fitzgerald's urinalysis results on pretrial supervision in this case came back negative, *id.*, her struggle with addiction demonstrates a significant risk that she would return to drug use were she to be released.

Third, Ms. Fitzgerald has a lengthy and serious criminal history. *See id.* at 12-16. In 2010, she began committing financial crimes and, in 2011, she was convicted of conspiracy to distribute 50 grams or more of methamphetamine in the United States District Court for the Western District of Virginia, resulting in a four year sentence. *Id.* at 13-15. While on supervised release for that offense, she committed the crime in this case. *Id.* at 15. Ms. Fitzgerald does not explain how home release would not lead to recidivism or present a risk to the community. Given that Ms. Fitzgerald committed the crime in this case while on supervised release, the Court finds that she poses a high risk for recidivism and a danger to the community. This risk is compounded by Ms. Fitzgerald's lack of any significant work history. *Id.* at 23.

Fourth, Ms. Fitzgerald's current sentence is for 138 months, of which she has served only 16 percent, including the good conduct time she is expected to earn throughout the length of her term. *See* Docket No. 467-1 at 13, ¶ 25. The Court finds that releasing Ms. Fitzgerald now would minimize the seriousness of her offenses.[2]

---

[2] Ms. Fitzgerald argues that the Court ordered compassionate release in a similar case and, as a result, the reasoning there justifies Ms. Fitzgerald's release here. *See* Docket No. 460 at 13, 16, 18. However, Ms. Fitzgerald's circumstances are significantly different. The defendant in *United States v. Campanella*, – F. Supp. 3d –, No. 18-cr-00328-PAB-12, 2020 WL 4754041 (D. Colo. Aug. 17, 2020), had very little criminal history, served substantially more of her sentence, and had a much shorter sentence to begin with. *Id.* at *3-5. As a result, the grounds for release in *Campanella*

The Court has determined that Ms. Fitzgerald has failed to establish that compelling and extraordinary circumstances exist justifying compassionate release. Accordingly, the motion will be denied.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Christina Fitzgerald's Emergency Motion for Compassionate Release [Docket No. 460] is **DENIED**.

DATED November 17, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

do not justify Ms. Fitzgerald's release.